IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: PEDRO JAVIER NEVAREZ BRUNO<br><br>XXX-XX-2002<br><br>DEBTOR | CASE NO.: 18-05191-BKT<br><br>CHAPTER 13 |

**MOTION REQUESTING DISMISSAL FOR FAILURE
TO MAKE POST-PETITION DSO PAYMENTS**

**TO THE HONORABLE COURT:**

**COMES NOW,** DSO RECIPIENT DR. JORANNIE CRUZ NIEVES (hereinafter, "Dr. Cruz"), by and through the undersigned attorney and very respectfully state and pray as follows:

**I. PRELIMINARY STATEMENT**

Dr. Cruz moves for the dismissal, with prejudice, of the instant case due to Debtor's failure to pay pre and post-petition court ordered domestic support obligation payments, totaling some **$4,550.00**. As further discussed herein, while on bankruptcy the Debtor has continued to enjoy his lavish lifestyle, yet he willfully accrued arrears in his court ordered post-petition DSO payments.

Moreover, the Debtor did committed perjury to get the approval of his Chapter 13 Plan and enjoy the benefits afforded by the Bankruptcy Code.

1

## II. FACTS

1. The Debtor and Dr. Cruz started a consensual relationship more than ten years ago.

2. The Debtor and Dr. Cruz are the parents of a young child (G.J.N.C.).

3. After a few years, the relationship between the Debtor and Dr. Cruz deteriorated and they ended it.

4. On December 27, 2016 filed an action in State Court seeking the custody of her child and imposition of domestic support obligation payments, Civil Case D CU2016-0610.

5. Pursuant to an agreement reached by the debtor and Dr. Cruz during a hearing held on January 17, 2020, the Debtor agreed to pay the sum of **$4,550.00** to cover Dr. Cruz's legal fees incurred during the pendency of the case. See, Exhibit 1.

6. On February 03, 2020 Hon. Judge Katherine Hoffman Egozcue entered a judgment in Civil Case D CU2016-0610 ordering the Debtor to pay Dr. Cruz said $4,550.00 **within 60 days**. See, Exhibit 1.

7. Said 60 days term expired on **April 03, 2020** and the Debtor has failed to comply with the Local Court's order.

8. At the time of filing, the Debtor had assets exceeding ONE MILLION DOLLARS in value and liabilities in the sum of FOUR HUNDRED TWEENTY SIX THOUSAND DOLLARS. Of said liabilities, around FOUR HUNDRED THOUSAND DOLLARS relate to secured claims, which had no pre-petition arrears.

9. In other words, at the time of the filing of the instant case the Debtor was not insolvent, had no difficulties whatsoever paying his bills, did not had any "cash flow"

issues and enjoyed a lavish lifestyle due to the fact that 70% of his business's income comes from cash sales.

10. There should be no doubt as to the reasons behind the filing of the instant case. Debtor filed the instant case with the sole purpose of defeating the State Court litigation in the Domestic Support Obligation and Custody cases filed by Dr. Cruz.

11. The Debtor came before this Honorable Court with "unclean hands". Since the filing of the instant case, the Debtor has committed perjury on several occasions.

12. During the Special 341 Meeting of Creditors held on July 08, 2019 by the Office of The United States Trustee the Debtor was asked on several occasions about his relationship with **JS Ambulance Systems, Inc.** Specifically, the Debtor was asked if he had any relationship with said company; if he had any interest in it, and if he was involved in its operation. Under penalty of perjury, the Debtor denied having any relationship, interest or control of said company.

13. As per the attached Corporate Resolution of **JS Ambulance Systems, Inc.**, signed by the Debtor, after confirming his Chapter 13 Plan he did formally became the President of said corporation. See, Exhibit 2.

14. Since the Debtor has the habit of not using his full name in his business affairs, the Stipulation Denying Discharge is attached herein as Exhibit 3 for the purposes of corroborating the wet signature of the Debtor. See, Exhibit 3.

15. It's quite obvious that as president of **JS Ambulance Systems, Inc.**, the Debtor has been enjoying an additional income, not disclosed in any of the documents filed before this Honorable Court.

16. While the Debtor has deliberately delayed the DSO payments to Dr. Cruz and has refused to pay her the $4,550.00 ordered in the Judgment entered, he has continued to enjoy a lavish lifestyle during the pendency of the instant case.

17. As per the photos attached herein as Exhibits 4, 5 & 6, while on bankruptcy the Debtor has been able to throw a huge party, with several musical group, including "Los Cantores de San Juan". See, Exhibit 4, 5 & 6.

### III. ANALYSIS

A. LACK OF GOOD FAITH

The main purpose of bankruptcy is to give debtors a fresh start from oppressive debt by either liquidating the debtor's assets or by allowing the debtor to pay at least some of the debt over time. It also forces all creditors to deal with the debtor through the bankruptcy court, so that no one creditor prevails at the expense of other creditors and most of the unsecured creditors are paid an equal portion of their debt, whatever that may be.

However, the bankruptcy process can only work if the debtor is honest and comes to the process with clean hands, because much of the process depends on the debtor's disclosure of financial information his income, expenses, and assets. Furthermore, bankruptcy should not be permitted to be used as a means for the debtor to defeat state court litigation or to get money without the intention of paying it back.

Hence, bankruptcy depends heavily on the debtor's good faith. In bankruptcy, **good faith** is the debtor's honest intention of using the bankruptcy process to get a fresh start from oppressive debts which were incurred either because of circumstances beyond his control, such as medical debts, the loss of employment, or decreased

4

business, or because the debtor did not manage his finances well. In other words, the debtor did not borrow any money that he did not intend to pay back.

Since good faith is required for bankruptcy to work as intended, bankruptcy judges punish the **lack of good faith** by either dismissing the bankruptcy case without giving the debtor a discharge and by lifting the automatic stay that prevented creditors from confiscating property or income to pay off their debts.

Although good faith is not defined in the bankruptcy code, judges have, over the years, developed criteria to determine whether the debtor has good faith. However, good faith must be determined by the <u>totality of the circumstances</u>.

According to the Ninth Circuit, the court should consider the totality of circumstances in determining whether a Chapter 13 bankruptcy case should be dismissed with prejudice for bad faith. In re Leavitt, 171 F.3d at 1224 (citation omitted). In Leavitt, the Ninth Circuit set out four factors that the bankruptcy court should consider in determining whether the totality of circumstances of a debtor's Chapter 13 case indicates bad faith as a cause to warrant dismissal with prejudice:

1. <u>Whether the Debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition or plan in an inequitable manner;</u>
2. The Debtor's history of filings and dismissals;
3. **Whether the Debtor only intended to defeat state court litigation**;
4. <u>Whether egregious behavior is present</u>.

The ability to repay debts, living an expansive lifestyle beyond one's means, and singling out a major creditor for nonpayment are the primary factors that merit dismissal

5

for abuse under Section 1307 of the Bankruptcy Code provides that on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a Chapter 13 case to a case under Chapter 7 or dismiss a case under Chapter 13 for cause, whichever is in the best interests of creditors. 11 U.S.C. § 1307(c).

"Cause" is not defined but includes the following:

1. (1)  unreasonable delay by the debtor that is prejudicial to creditors;
2. (2)  nonpayment of any fees and charges required under chapter 123 of title 28;
3. (3)  failure to file a plan timely under section 1321 of this title;
4. (4)  failure to commence making timely payments under section 1326 of this title;

(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) material default by the debtor with respect to a term of a confirmed plan;

(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;

(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;

(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a);

6

(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521(a); or

(11) failure of the debtor to pay any domestic support obligation that first 8 becomes payable after the date of the filing of the petition. 11 U.S.C. § 1307(c)(1)-(11).

Lack of good faith, or bad faith, is not specifically listed as a ground for dismissal, although the Court must find that the plan has been proposed in good faith and that the action of the debtor in filing the petition was in good faith to confirm a Chapter 13 plan. *See* 11 U.S.C. § 1129(a)(3) and (7). Nevertheless, the United States Supreme Court has recognized that bad faith may constitute cause for dismissal or conversion. *See* Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 379 (2007). Additionally, the United States Bankruptcy Appellate Panel for the First Circuit has observed "it is well established that lack of good faith (or bad faith) is 'cause' for dismissal or conversion of a Chapter 13 case under § 1307(c)." Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 211 (B.A.P. 1st Cir. 2005) (citing In re Cabral, 285 B.R. 563, 573 B.A.P. 1st Cir. 2002); Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999); Ho v. Dowell (In re Ho), 274 B.R. 867, 877 (B.A.P. 9th Cir. 2002); In re Dicey, 312 B.R. 456, 458 (Bankr. D. N.H. 2004); In re Fleury, 294 B.R. 1, 5 (Bankr. D. Mass. 2003); and In re Virden, 279 B.R. 401, 407 (Bankr. D. Mass. 2002)).

According to the panel in Sullivan, Courts differ in their approach to determining a debtor's good faith, but the majority favor a totality of the circumstances test to determine whether a debtor lacked good faith in filing a Chapter 13 petition for purposes of § 1307(c).

In applying the totality of the circumstances test to determine whether a Chapter 13 petition has been filed in bad faith, bankruptcy courts generally consider the following factors: (1) debtor's accuracy in stating his debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether he has attempted to mislead the court and whether he has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter 13 relief. Cabral, 285 B.R. at 573; Dicey, 312 B.R. at 459; Virden, 279 B.R. at 408.

The hallmark of the totality of the circumstances test is that the factors to be considered may vary in each case. "The bottom line is whether the debtor is attempting to thwart his creditors, or is making an honest effort to repay them to the best of his ability." Virden, 279 B.R. at 409.

The debtor's bankruptcy may be considered bad faith if there doesn't seem to be any <u>economic reason for the bankruptcy</u>.  If a debtor is not financially distressed and uses the bankruptcy process only to stop a lawsuit or some other creditor action, then the bankruptcy case is bad faith. The debtor's bankruptcy case may be considered bad faith if the debtor refuses to cooperate with the court. Refusal to provide documents or to appear in court can be considered a bad faith act and end in the dismissal of the debtor's bankruptcy case.

"[e]very bankruptcy statute since 1898," including the current Code, has "incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution and confirmation of bankruptcy proceedings." *In re Little*

*Creek Develop. Co.,* 779 F.2d 1068, 1071-72 (5th Cir. 1986). This good-faith requirement exists (1) to prevent the "abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way" and (2) as a means to protect "the jurisdictional integrity of the bankruptcy courts" by making the Code only available to debtors with "clean hands." *Id.* at 1072.

The Bankruptcy Code provides authority for the bankruptcy court to dismiss a Chapter 13 case or convert it to a Chapter 7 liquidation based on "cause." This authority is found in 11 U.S.C. § 1307(c) which provides that "[e]xcept as provided in subsection (e) of this section, on request of party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, <u>whichever is in the best interests of creditors and the estate, for cause</u>…."

With the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress enlarged the requirements for confirmation of a debtor's chapter 13 plan to include that "the plan has been proposed in good faith and not by any means forbidden by law," 11 U.S.C. 1325(a)(3), and a determination of good faith in the filing of petition. 11 U.S.C. § 1325(a)(7). In Marrama v. Citizens Bank of Mass., 549 U.S. 365 (2007), the Supreme Court recognized that at the outset of a chapter 13 case, in response to a motion to dismiss the case or convert the case to a case under chapter 7 and prior to a confirmation hearing, <u>a court can determine whether the debtor acted in bad faith prior to, or in the course of, filing a chapter 13 petition</u>. Marrama, 549 U.S. at 368. It stated that "despite the absence of any statutory provision specifically addressing the issue, the federal courts are virtually

9

unanimous that prepetition bad-faith conduct may cause a forfeiture of any right to proceed with a Chapter 13 case." Id. at 367-68. It later discussed the expansion of Section 1307(c) to include prepetition bad-faith conduct as the statutory authority for the conversion or dismissal. Id. at 373.

As there is no clear definition in the Bankruptcy Code as to what constitutes good faith, bankruptcy courts must look at the totality of the circumstances when making such a determination. In re Goddard, 212 B.R. 233, 238 (D.N.J.1997) Among the factors considered under the totality of the circumstances inquiry include:

1. the nature of the debt;
2. the timing of the petition;
3. how the debt arose;
4. the debtor's motive in filing the petition;
5. how the debtor's actions affected creditors;
6. the debtor's treatment of creditors both before and after the petition was filed; and
7. whether the debtor has been forthcoming with the bankruptcy court and the creditors.

Material misrepresentations and omissions in a debtor's schedules are factors that a court may consider in determining whether dismissal for bad faith is appropriate. Debtors have an ongoing and independent duty to provide accurate and complete information on their schedules regardless of whether they were assisted by counsel in preparing their schedules. See, In re Barrows, 399 B.R. 506, 511 (Bankr. D. Minn. 2009). "The purpose of the schedules is to ensure that there is adequate information available to the debtor's creditors – there should be no independent duty placed upon the creditors to conduct an investigation to ensure that the information in the schedules

10

and statements is true, accurate and complete." In re Seung Chan Park, 480 B.R. 627, 639 (Bankr. D. Md. 2012). "To allow [a debtor] to use his discretion in determining the relevant information to disclose would create an end-run around this strictly crafted system."

If the bankruptcy process is to have credibility, schedules must be accurate and complete. As one bankruptcy court explained: Honesty and full disclosure are absolutely required for bankruptcy jurisprudence to function and have credibility among its participants and the public. Full disclosure in any bankruptcy case begins with accurate schedules, including a description of all the debtor's assets. Schedules are signed by debtors under penalty of perjury, and counsel signs bankruptcy petitions under the implicit representations of Rule 9011(b). The gauge for measuring the accuracy of bankruptcy schedules is not calibrated with the same tepid standard applicable to averments in a civil action complaint. Rather, bankruptcy schedules are representations of hard facts about which there should be little or no equivocation, and to the extent there is uncertainty, it should be explained.
In re Bishop, 2009 WL 348844, (Bankr. N.D. Ala. 2009) (Robinson, J.).

The suspicious timing of a bankruptcy petition is an appropriate factor for a court to consider in this bad faith analysis. See, In re Tamecki, 229 F.3d 205, 208 (3d Cir. 2000).

The should be no doubt that the Debtor filed the instant case simply to gain a tactical advantage and to defeat the State Court litigation in the several cases Dr. Cruz had filed against the Debtor.

11

When looking at the totality of the circumstances behind Debtor's Chapter 13 filing, We find that:

a. He had little or no unsecured debts;
b. His business was grossing over ONE MILLION DOLLARS, most of it in cash sales;
c. He had no cash flow problems;
d. He had no arrears in his mortgages;
e. The only legal action he had pending at the time of filing was the claim filed by Dr. Cruz;
f. He tried to conceal assets;
g. He under valuated his assets;
h. He has exhibited an egregious conduct;
i. He has failed to comply with all of the requirement set forth by in the Bankruptcy Code;
j. He has made **post-petition** cash payments in excess of NINETY ONE THOUSAND DOLLARS, outside of bankruptcy, to creditors, insiders and to continue living a lavish lifestyle.
k. He has been able to pay in cash for two ambulances.
l. He agreed to forever be barred from receiving a discharge of all debts incurred up to the date of the filing of the instant case.

Thus, Dr. Cruz respectfully submits that there is cause to have the instant case dismissed, with a one year bar to re-file, due to Debtor's misconduct

B. POST-PETITION DSO ARREARS

The term "domestic support obligation" was added to §101 of the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The term is defined in §101 (14A) as:

[A] debt that accrues before, on or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable non bankruptcy law notwithstanding any other provision of this title, that is - -

(A) owed to or recoverable by -

(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative;

(B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of - -

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record;……

If, at the time of the bankruptcy filing, a debtor owes a matured DSO, the DSO recipient may assert a claim for the DSO amount which was due prepetition. That is, "[t]o the extent . . . that a claim is for matured [DSO] payments unpaid at the time of the filing of the petition, the claim would be proper and would, therefore, be allowed to share in a distribution of the debtor's assets. Indeed, such a claim would be entitled to priority . . . ." Collier on Bankruptcy, ¶ 502.03[6][a] (Matthew Bender 2005).

Such matured DSO claims are elevated to first priority payment in accordance with § 507(a)(1)(A), which provides in relevant part:

(a) The following expenses and claims have priority in the following order: (1) First:

(A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative,.....

13

Section 1307(c)(11) of the Bankruptcy Code provides that the court may convert a chapter 13 case to a chapter 7 case or <u>dismiss</u> a chapter 13 case for cause, including "failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition."

Section 1325 of the Bankruptcy Code provides, in relevant part:

(a) Except as provided in subsection (b), the court shall confirm a plan if - -

(8) the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation; . . . .

In the instant case the Debtor failed to comply with the payment of **$4,550.00** ordered by the State Court in the Judgment related to the attorney fees incurred by Dr. Cruz in the litigation of the DSO case.

Debtor's failure to maintain current with his DSO payments constitute cause for dismissal of the instant case pursuant to Section 1307(c)(11) of the Bankruptcy Code.

### IV. LEAVE TO FILE DOCUMENTS IN THE SPANISH LANGUAGE

Dr. Cruz hereby request leave from this Honorable Court to file Exhibit 1 and 2 (DSO Resolutions) in the Spanish language and request 30 days to file certified translations in the English language, pursuant to LBR-9070-1(c).

### V. SERVICEMEN'S CIVIL RELIEF ACT OF 2003

As per the attached Certificate issued by the Department of Defense Manpower Data Center on May 12, 2020, the Debtor is not a service member, in active duty, of any of the armed forces of the United Sates of America. <u>See</u>, Exhibit 7.

## VI. RELIEF

**WHEREFORE**, Dr. Jorannie Cruz Nieves respectfully request from this Honorable Court to enter an order dismissing the instant case pursuant to 11 U.S.C. Sec. 1307 (11), with prejudice, and with the imposition of a one year bar to refile.

**NEGATIVE CERTIFICATION PURSUANT TO SECTION 201(B)(4) OF THE SERVICEMEN'S CIVIL RELIEF ACT OF 2003:** I hereby declare according to the attached certification, provided by the Department of Defense Manpower Data Center, the Debtor is not in active duty as a member of the ARMY, NAVY or AIR FORCES of the United States of America; the National Guard; the Public Health Service of the National Oceanic and Atmospheric Administration.

## NOTICE

**Within thirty (30) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f), if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file a written objection or other appropriate response to this paper with the Clerk's Office of The United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is timely file within the time allowed herein, the paper will be deemed unopposed and may be granted without any further hearing unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.**

**I HEREBY CERTIFY** that the foregoing document was filed with the Clerk of the Court using the CM/ECF System which will send a notification of such filing to debtor's attorney and to the United States Trustee and to all other parties on record.

15

**I DO HEREBY FURTHER CERTIFY** that on this same date a true and exact copy of the foregoing document was sent by regular United States mail to: **Non CM/ECF** participants at their address of record, as per the attached Address List.

In San Juan, Puerto Rico this 12th day of May 2020.

/S/Héctor Eduardo Pedrosa Luna
_____

Héctor Eduardo Pedrosa-Luna, Esq.
USDC-PR No. 223202
P.O. Box 9023963
San Juan, PR 00902-3963
Tel. 787-920-7983
Fax 787-754-1109
hectorpedrosa@gmail.com